PREGERSON, Circuit Judge.
Phelps Dodge Corporation permanently replaced striking employees, including plaintiff Gordon Dockray. Phelps Dodge informed the strikers that they were not working because no work was available for them, rather than because they were on strike. Consequently, Phelps Dodge can-celled the strikers’ entitlement to company medical insurance benefits. Dockray then applied to Phelps Dodge’s company-administered pension plan for early retirement to which he would be entitled if Phelps Dodge had laid him off for lack of work. The Plan Administrator, who is also Director of Employee Benefits for Phelps Dodge, refused Dockray’s early pension claim. Dockray sued to compel payment of his claim. The district court found for Dock-ray holding that, by its own admission, Phelps Dodge had laid off Dockray for lack of work and that this bound the Plan Administrator in determining Dockray’s status for early pension benefits. We reverse and remand for further proceedings.
FACTS
Union employees struck Phelps Dodge’s mine in Ajo, Arizona on July 1, 1983. The strike continues. Gordon Dockray has supported the strike throughout and continues to refuse to sign Phelps Dodge’s preferential reinstatement list. By signing the list a striker agrees to cross the picket line and return to work as soon as a suitable vacancy arises. Phelps Dodge hired new employees to replace the strikers and, on *1151 September 9, 1983, notified the strikers, including Dockray, that Phelps Dodge had replaced them permanently. In his letter of notification to Dockray and the other replaced strikers, Carl Forstrom, manager of the Ajo mine, stated:
Accordingly, you are being dropped from the payroll and placed in the status of a permanently replaced economic striker. As such you and your dependents are no longer eligible for coverage or benefits under the Group Insurance Plan, the Group Dental Expense Insurance Plan, or the Vision Care Benefit Plan. In addition, since the reason you are not now working is that there is no work available for you (and not because you are “refraining from work because of a strike”), under the terms of Article III, Section E of the Hospital-Medical-Surgical Benefits Plan, benefits under the Plan will not be available to you or your dependents when the period, if any, for which the Company has accepted monthly premium payments from you has expired, and the Company will not accept any further premium payments from you.
(Emphasis in original.)
Phelps Dodge’s Pension Plan for Day’s-Pay Employees (“Plan”) includes an early retirement provision (“70/80 Vesting pension”). Any Plan participant who has more than ten years continuous service with Phelps Dodge and is at least fifty-five years of age, and whose age plus service exceeds seventy years, is entitled to an early pension under the Plan if “laid off after June 30, 1980 for lack of work.” Dockray’s age and seniority qualify him for a 70/80 Vesting pension.
The Plan Administrator, Robert McGowan, is also the Director of Employees Benefits for Phelps Dodge. McGowan denied Dockray’s application for a 70/80 Vesting pension. In an affidavit to the district court, McGowan stated that the 70/80 Vesting provision applies only to “employees required by the Company to cease working as a result of lack of work. It does not include employees who resign or stop work temporarily or permanently when they have not been forced to do so by the Company.” Thus, McGowan concluded, since Dockray “was not required by the Company to cease working,” he is ineligible for a 70/80 Vesting pension.[1]
After exhausting his administrative remedies, Dockray filed a state contract action to recover benefits due to him under the Plan. Phelps Dodge removed the suit to federal court where Dockray filed an amended complaint under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due under a plan covered by the Employee Retirement Income Security Act (“ERISA”). Both parties filed for summary judgment.
The district court granted summary judgment in favor of Dockray, holding that Phelps Dodge was bound by the language in Forstrom’s notification letter to Dock-ray. The court found that Phelps Dodge’s intentions, as expressed by the notification letter, were to lay off Dockray. Thus, the court concluded, the decision to deny Dock-ray a 70/80 Vesting pension was
arbitrary and capricious and plainly wrong as a matter of law.
The plaintiff continued to be an employee while an economic striker. It is the defendant who chose the terminology providing that its employee Dockray could not work at the job for which he was employed because there was no work available for him. The defendant chose to use that language to absolve itself of responsibility in connection with the hospitalization plan. Having elected to do so, it cannot now disavow that language and interpretation to suit yet another purpose advantageous to it.
Phelps Dodge timely appealed.[2]
*1152 STANDARD OF REVIEW
Summary judgment is proper if there is no genuine issue of material fact and the moving party should prevail as a matter of law. Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.1985); Fed.R.Civ.P. 56(c). We review de novo a district court’s grant of summary judgment. Id.
Normally, a court will review a decision of an administrator of an employer-administered ERISA fund according to the same standard as it would review a decision of an independent trustee. See id. A court should reverse the decision of the administrator of an employer-administered plan “only where [the decision is] arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law.” Id. at 711 (quoting Music v. Western Conference of Teamsters Pension Trust Fund, 712 F.2d 413, 418 (9th Cir.1983)). An administrator’s decision is not arbitrary or capricious if it is a reasonable interpretation of the plan’s terms and was made in good faith. Jung, 755 F.2d at 713. Absent special circumstances, a court should defer to the administrator’s “reasonable resolutions of any ambiguities in the Plan's language,” rather than construe ambiguities in favor of plan participants. Id. (quoting Smith v. CMTA-IAM Pension Trust, 654 F.2d 650, 655 (9th Cir.1981)).
In Jung, we recognized that, where the administrator’s decision presented a serious conflict between the interests of the employer and those of the fund’s beneficiaries, a court should give “less defer-
ence” than usual, under the arbitrary and capricious standard, to the decision of the administrator of the employer-administered fund. 755 F.2d at 711-12 (decision in beneficiaries’ favor would result in “very substantial outlay” by employer). See also Struble v. New Jersey Brewery Employees’ Welfare Trust Fund, 732 F.2d 325, 333-34 (3d Cir.1984) (applying less deference to decision of employer trustees because “gravamen of the plaintiff’s complaint is not that the trustees have incorrectly balanced valid interests, but rather that they have sacrificed valid interests to advance the interests of non-beneficiaries.”).
We think that a lesser degree of deference is also due here to the decision of McGowan, the fund administrator. The conflict facing McGowan is financial, as in Jung and Struble, although the financial interest of Phelps Dodge may not be large because there are apparently relatively few striking Ajo mine employees with sufficient seniority to qualify for a 70/80 Vesting pension. However, the countervailing tugs of divided loyalty pulling at McGowan here are at least as strong as those confronting the fund administrators in either Jung or Struble.
At the time that Administrator/Employee Benefits’ Director McGowan denied Dockray’s pension application, the strike had entered its third month.[3] The strike had been unusually bitter and violent. The Governor of Arizona had sent National Guardsmen to protect replacement workers as they crossed the lines of massed pickets outside the mine gates. Scuffles, property *1153 damage, vigilante violence, and numerous arrests had attracted national media attention to the dispute. For Dockray to “win” his pension would no doubt have boosted the strikers’ morale at a time when Phelps Dodge had apparently succeeded in overcoming the picketing and had fully staffed the mine with replacement workers. Given this highly charged atmosphere, we think it unrealistic to grant the same substantial deference to the consideration of Dockray’s application by an administrator who is also a senior member of Phelps Dodge management as we would to the decision of a wholly independent fund trustee in similar circumstances.
On remand, the burden of persuasion, of course, remains with Dockray. To prevail, Dockray must show that the Administrator breached his statutory fiduciary duty to act “for the sole and exclusive benefit” of the fund’s beneficiaries, including Dockray. 29 U.S.C. § 186(c)(5). The court will weigh the Administrator’s rebuttal of Dockray’s evidence of bias against the arbitrary and capricious standard. However, the district court should be appreciably more critical of the reasons advanced by the Administrator, and less willing to resolve all ambiguities in the Administrator’s favor, than the court would be if the fund were administered by an independent trustee.
ANALYSIS
I.
The district court found that Phelps Dodge had laid off Dockray and that to deny him a 70/80 Vesting pension was arbitrary and capricious. Phelps Dodge argues that the Plan Administrator could reasonably construe the conditions for a 70/80 Vesting pension to exclude a person like Dockray who is indisputably an economic striker and whose absence from work was precipitated by his own voluntary action.
Federal labor laws recognize an employee’s right to strike over wages or working conditions (“economic strike”). See NLRB v. Insurance Agents’ International Union, 361 U.S. 477, 488-96, 80 S.Ct. 419, 426-31, 4 L.Ed.2d 454 (1960). Strikers retain their status as employees during the strike, and the employer must normally restore strikers to their former positions after the strike. See NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 378, 88 S.Ct. 543, 545-46, 19 L.Ed.2d 614 (1967); NLRB v. Erie Resister Corp., 373 U.S. 221, 233, 83 S.Ct. 1139, 1148, 10 L.Ed.2d 308 (1963). The employer need not rehire an economic striker if the former striker’s job is occupied by a permanent replacement worker hired to ensure the continuous operation of the employer’s business during the strike. See Belknap, Inc. v. Hale, 463 U.S. 491, 493, 103 S.Ct. 3172, 3174, 77 L.Ed.2d 798 (1983); NLRB v. Murray Products, Inc., 584 F.2d 934, 938 (9th Cir.1978).
The strike against the Phelps Dodge Ajo mine still continues, and Dockray remains an economic striker.[4] The National Labor Relations Board has stated: “Economic strikers are not ‘laid off’ employees.” Bancroft Cap Co., 245 N.L.R.B. 547, 550 (1979). “ ‘Laid off’ employees and ‘economic striker’ employees [have] different status.” Id. at 551. A laid off employee stops working against his or her own wishes; the employer makes the lay off decision. An economic striker stops work *1154 ing of his or her own volition; the employee makes the decision to strike and to remain on strike. See Brooks Research and Manufacturing, Inc., 202 N.L.R.B. 634, 636 (1973) (economic strikers’ rights are “statutory as distinguished from the rights of laid-off employees. A lay off constitutes a discontinuance of work for an employee which does not rise to the level of a lawful economic strike.”).
The district court was, therefore, incorrect to hold as a matter of law that Phelps Dodge laid off Dockray. The district court may well have been correct when it concluded that the language used in the notification letter was intended to absolve Phelps Dodge of any liability to Dockray under the terms of the company’s health insurance schemes. However, despite what Phelps Dodge said in its notification letter to Dockray, his status is fixed by federal labor law and not by his employer’s economic interests.
Thus, absent all other circumstances, the Plan Administrator’s refusal to grant a 70/80 Vesting pension to Dockray would be a reasonable interpretation of the Plan. The Plan provides for a 70/80 Vesting pension to a qualified employee who is “laid off ... for lack of work.” Dockray is an economic striker, and, in normal circumstances, the Plan Administrator certainly could reasonably have interpreted the Plan provision to limit eligibility to employees whose cessation from work was involuntary or otherwise at Phelps Dodge’s behest.
II.
While the district court’s summary judgment decision rested on a legal determination of Dockray’s employment status, the court also emphasized that its decision was influenced by its view of the equities of the case. We share the district court’s view that the equities here appear to tip sharply in favor of Dockray. However, there is insufficient undisputed evidence in the record that would permit us now to affirm the district court’s summary judgment in favor of Dockray on alternative equitable grounds. See Smith v. Block, 784 F.2d 993, 996 n. 4 (9th Cir.1986) (appellate court may affirm on any ground supported by the record). Thus we remand the matter to the district court for further evidentiary proceedings.
Phelps Dodge had earlier informed Dock-ray that “the reason you are not now working is that there is no work available for you (and not because you are ‘refraining from work because of a strike’).” Phelps Dodge does not dispute the district court’s conclusion that this terminology was used to justify the discontinuance of Dockray’s entitlement to benefits under the company health insurance scheme. However, later, the Plan Administrator flatly contradicted Phelps Dodge’s chosen description of Dock-ray’s status to deny payment of a 70/80 Vesting pension to Dockray. McGowan, the Plan Administrator, is a senior management employee of Phelps Dodge. His subsequent decision to deny that Dockray had been “laid off ... for lack of work” may constitute bad faith.[5] Alternatively, Phelps Dodge’s characterization of Dockray as “not now working [because] there is no work available for you” may estop McGowan from denying that Dockray was "laid off ... for lack of work.”
A.
To the extent that Phelps Dodge’s contradictory posture constitutes bad faith, it may also in the circumstances constitute bad faith by the Plan Administrator. The Administrator is required to act “for the sole and exclusive benefit of the employees,” 29 U.S.C. § 186(c)(5); see NLRB v. Amax Coal Co., 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981); Jung 755 F.2d at 710 n. 3. For example, there may be evidence that McGowan, in his role as Phelps Dodge’s Director of Employee Benefits, was in some way consulted by the mine manager over the notification letter’s reference to Dockray’s status and *1155 loss of health insurance coverage. If this were so, he could be said to have acted in bad faith in denying for the purposes of the 70/80 Vesting pension the company’s earlier characterization of Dockray’s status in the notification letter.
The district court did not resolve these questions. While the district court implied that Phelps Dodge acted in bad faith, it made no such finding for the Plan Administrator. The focus of the court’s inquiry must be on McGowan, the Plan Administrator. To prevail, Dockray must prove taint in McGowan’s decision to deny him his 70/80 Vesting pension, not sharp practice by Phelps Dodge generally. Because the district court decided the matter on summary judgment without a factual hearing, we have no basis for determining whether bad faith can be imputed to McGowan, and, therefore, must remand the matter to the district court for further proceedings on this issue.
B.
Even though ERISA preempts common law theories of contract law, see Blau v. Del Monte Corp., 748 F.2d 1348, 1356-57 (9th Cir.1984), cert. denied, — U.S. -, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), the principles of equitable estoppel apply to pension plans. Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1096 (9th Cir.1985). In this circuit, estoppel is available against a nongovernmental party who has made a knowing false representation, or concealment of material facts, to a party ignorant of the true facts, with the intention that the other party should rely on the representation, and the other party actually and detrimentally relies on it. See Jaa v. INS, 779 F.2d 569, 571 (9th Cir.1986).
For equitable estoppel to apply here Dockray must, at least, prove that four “elements” are all present. See Ellenburg, 763 F.2d at 1096. Dockray would need to show: first, that Phelps Dodge intended to characterize Dockray as a laid off employee for the company’s own benefit; second, that Phelps Dodge intended to cut off Dockray’s rights to medical benefits (available) to other non-striking Phelps Dodge (employees) because Dockray is an economic striker; third, that Dockray accepted Phelps Dodge’s assertion that he was not working because there was no work available for him rather than because he was on strike; and fourth, that Dockray relied on Phelps Dodge’s prior characterization of his status as a laid off employee to apply for a 70/80 Vesting pension, and that the resulting denial of the pension was to Dockray’s detriment.
Again, there is insufficient evidence in the record for us to determine the question now. Phelps Dodge disputes that Dockray can satisfy any of the four necessary elements to show estoppel. Moreover, factual findings concerning McGowan’s personal role in the drafting of the notification letter are necessary to establish whether any es-toppel effect can also run to the Plan Administrator. As with bad faith, Dockray will need be demonstrate the inequity of the Administrator’s behavior, rather than point the finger at Phelps Dodge. Here again, a remand is essential for the district court initially to make the appropriate findings of fact.
CONCLUSION
The district court’s legal conclusion that Phelps Dodge laid off Dockray when it notified him of his permanent replacement was incorrect. Taken alone, the Plan Administrator’s refusal of Dockray’s 70/80 Vesting pension was a reasonable interpretation of the Plan. However, Dockray may still prevail if he can show either that the Plan Administrator acted in bad faith or that the Administrator is estopped from denying that Phelps Dodge laid off Dock-ray for lack of work. Both these questions require the resolution of disputed factual matters in further proceedings before the district court.
REVERSED AND REMANDED.

. The Administrator concedes that Dockray will be entitled to general retirement pension benefits under the Plan when he reaches the prescribed retirement age.

. Dockray’s amended complaint named the Plan Trustee, Manufacturers Hanover Trust Company, as a co-defendant. The district court’s original order required the Plan Trustee to pay Dock-ray his benefits. In response to a motion by Phelps Dodge under Fed.R.Civ.P. 59(e), the district court amended its order to delete the instruction to the Trustee because Dockray never served the Trustee with the amended complaint. *1152 The district court also issued a final judgment order against Phelps Dodge alone under Fed.R. Civ.P. 54(b).
Dockray’s amended complaint also named the Plan as a co-defendant. However, Dockray never served the Plan. Nonetheless, there is apparently no impediment to Dockray pursuing an ERISA suit against his employer, rather than the Trustee or the Plan, because the Plan is administered by the employer rather than by an independent trustee. See Jung v. FMC Corp., 755 F.2d 708, 710-11 (9th Cir.1985). Phelps Dodge does not deny its financial liability for the decisions of the Plan Administrator notwithstanding the Administrator’s primary fiduciary responsibility to the Plan’s beneficiaries. See Jung, 755 F.2d at 710 n. 3; 29 U.S.C. § 186(c)(5). Indeed, in its Rule 59 motion to the district court, Phelps Dodge expressly accepted its legal responsibility to meet any Plan liability towards Dockray.

. The district court decided this case on summary judgment before plaintiffs offered any evidence on the events surrounding the Ajo mine dispute. A search of major newspapers produced several articles on the dispute of which we take judicial notice. Fed.R.Evid. 201(b); see Washington Post, Aug. 11, 1983, at A9; Washington Post, Aug. 10, 1983, at A6; New York Times, Aug. 9, 1983, at 2, Col. 2; New York Times, Aug. 7, 1983, at 19, Col. 1; New York Times, July 17, 1983, at 19, Col. 1.

. Because an economic striker remains an employee of the struck employer even if he or she has been permanently replaced, the employer is obliged to give preference to permanently replaced former strikers when a suitable vacancy arises. See Fleetwood Trailer, 389 U.S. at 381, 88 S.Ct. at 547; The Laidlaw Corp. v. N.L.R.B., 171 N.L.R.B. 1366, 1368-70 (1968), enforced, 414 F.2d 99 (7th Cir.1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). Dockray has refused to sign the preferential hiring list established by Phelps Dodge. Thus, there can be no doubt that Dockra/S'status under the federal labor laws is that of an economic striker. Given this, it seems likely that Phelps Dodge’s mischaracterization of Dockray’s status would prompt reinstatement of Dockray’s benefit entitlement under the health insurance scheme. However, no such claim was asserted before the district court. At oral argument, counsel for Phelps Dodge revealed that the mineworkers’ union had challenged the validity of Phelps Dodge’s withdrawal of medical benefits from replaced strikers, and that Phelps Dodge had "withdrawn’’ the Forstrom notification letter.

. We emphasize that we are making no findings of fact about McGowan’s actions concerning Forstrom’s letter to the strikers or about McGowan’s motivation for any such actions. Such determinations are for the district court to make on remand after hearing the relevant evidence.